[Civ. No. 4481. Second Appellate District, Division Two.—November 14, 1927.]

AGNES BLAIR, Respondent, v. EDWARD HUNTINGTON WILLIAMS, Appellant.

Schweitzer & Hutton for Appellant.

Lowenthal, Collins & Lowenthal and Victor Ford Collins for Respondent.

COLLIER, J., *pro tem.*—Defendant and one Beatrice N. Williams were at the trial of this action and for years prior thereto had been husband and wife. A son, Ned Williams, was born to them. Some time prior to July 6, 1919, they separated, the defendant coming to California and his wife and infant son remaining in Montclair, New Jersey. The court finds, and there is sufficient evidence to support it, that the defendant hired the plaintiff as a nurse for said child, who was then, and up to the time of the trial continued to be, a cripple and practically helpless. On July 6, 1919, from Los Angeles, the defendant wrote to plaintiff urging that Mrs. Williams, the boy, and plaintiff should come to Los Angeles. Later on they did come, defendant defraying part of the expenses of the trip. Upon their arrival defendant located them in a residence and visited them frequently, almost daily. These mutual relations continued for some time. Defendant likewise contributed to the support of the family, paid the plaintiff her wages from time to time by check and also on some occasions paid incidental moneys advanced by plaintiff. Defendant and his wife had some sort of a separation agreement, but what it was was not made known to the plaintiff and it does not appear in the transcript. As stated by the defendant in his opening brief, in October, 1920, defendant instituted an action for divorce from his wife. In that action, and in February, 1921, the court made an order requiring defendant to pay his wife $300 a month for the support of herself and their infant child, including the nursing of the said son. Subsequently, in the latter part of 1921, the court modified that order. The plaintiff was present in court on both of said occasions, and although she testified that she did not hear all the court said, yet she did know the objects for which the hearings were held and that she understood her wages were to be paid from the alimony money. The

trial court awarded plaintiff a total judgment of $885, of which $75 was for cash advanced and $810 for wages. We have separated the $810 into two amounts, covering two different periods of time. The first period is up to the first court order for alimony, and the second period for all time thereafter.

Plaintiff's testimony as to the amounts due her during the first period is epitomized as follows:

| | |
|---|---:|
| Balance due for December, 1919, January and February, 1920 | $ 35.00 |
| Balance due for wages for May, 1920 (Tr., p. 9, line 19) | 25.00 |
| Pay for plaintiff increased from $35 to $50 per month in May, 1920 | |
| Defendant did not pay for November and December, 1920 | 100.00 |
| Defendant did not pay for January and February, 1921 | 100.00 |
| | |
| Total due for first period | $260.00 |
| Total due for second period | 550.00 |
| | |
| Total award of court for wages | $810.00 |
| Award of court for cash advances | 75.00 |
| | |
| Total judgment of court | $885.00 |

At the alimony hearing in the latter part of 1921 the court, in the presence and hearing of the plaintiff herein, said to defendant (it does not appear whether it was an order or merely a suggestion) that plaintiff had apparently not received her wages; that Mrs. Williams was supposed to pay her, and that she should be paid the sum of $350; that that was all that was owing her at that time; and instructed defendant to pay plaintiff herein the sum of $100 immediately, and the balance when defendant could. It further appears that defendant paid the said sum of $100 on January 1, 1922, but it does not appear that he has ever paid the balance of $250. It does appear that he paid all alimony orders up to the time of the trial of this action. We therefore hold that the defendant is entitled to a credit on said sum of $260 for the first period

in the amount of $100, leaving a balance due for that period of $160.

■ "Sections 156, 196, and 198 of the Civil Code provide that the *primary duty* of the father is to support his minor children, that he is the head of the family, and that if the support of the father is inadequate the mother must assist him to the best of her ability." (*Fox* v. *Industrial Acc. Com.*, 194 Cal. 178 [228 Pac. 39].) In the instant case, particularly having in mind that the child Ned is a cripple and practically helpless, the *primary duty* to support him was on his father, the defendant herein. The evidence clearly shows that the defendant had assumed this burden until the first order for alimony in the divorce proceeding, but had fallen behind in his payments to the plaintiff in the sum of $260 for wages and $75 for incidentals, as above shown.

While it does not appear in the transcript, we may safely assume that the court order of February, 1921, awarded the custody of the child to the mother, otherwise she would not have been allowed a monthly sum for his support; and it appears from the evidence without conflict that the child was actually in the mother's custody.

■ Up to the making of this order in February, 1921, the responsibility of the defendant for the plaintiff's wages and cash advanced is perfectly clear, particularly in view of the defendant's letter to the plaintiff of date July 6, 1919, written to plaintiff at Montclair, New Jersey, urging that Mrs. Williams, the son, and plaintiff should come to California and establish a home. This liability was upon the defendant herein, both by his contract evidenced by said letter, and the common law, as well as our state statutes. What effect, then, does the divorce suit and the making of said alimony orders have upon said contract and responsibility?

It should be constantly borne in mind during this discussion that the plaintiff herein knew that the divorce action was pending, was present at all the alimony hearings, knew their purpose, heard the amount due her discussed between the parties to the divorce action and the court, and knew that her back and future wages were to be paid from the alimony money. She testified: "My back wages I understood was to be paid; my wages was to be

paid by the alimony." In other words, then, from February, 1921, on she "understood she was to be paid by the alimony"; and this is in keeping with the facts, for the only payments received by her thereafter, except the $100 paid her on January 1, 1922, by the defendant, were from Mrs. Williams.

In speaking of the first court order the plaintiff testified: "That was one what the court made, and then Mrs. Williams paid me while she would get the money from the court, and then after that they stopped my payments, because they could not continue paying me. After the court made the order Mrs. Williams commenced paying me just while she received the $350.00." In speaking of the second order she testified: "After the hearing before Judge Toland I received $100 from Doctor Williams. I did not understand the $100 was in accordance with any directions he received from the court to pay me. I did not receive any other money from Doctor Williams in 1922." It thus seems clear that plaintiff no longer relied on any contract she had with defendant, but "understood she was to be paid by the alimony," and continued in her labors with that understanding. Therefore, commencing with the court order in February, 1921, the relations of the parties changed, and the contract was superseded by the order for alimony.

And we think that plaintiff cannot recover against defendant beyond the court order of February, 1921, for other reasons. "All applicable laws in existence when an agreement is made enter into it and form a part of it as fully as if they were expressly referred to and incorporated in its terms." (6 Cal. Jur. 310, sec. 186.) And decisions of the appellate courts of this state interpreting those laws are likewise a part of such contract. (Indem.) With the foregoing in mind we approach a consideration of the authorities. At the outset it is well to state that on the question of the responsibility of the father for the support of his children after the entry of an order granting the custody of the children to the mother, either with or without a provision for their maintenance, there is a wide difference of opinion among the courts of the various states. According to some text-writers there are two rules, and the

one adopted by California, that under such circumstances the father is not liable, is the minority rule. (15 A. L. R. 573, note.) But so long as our supreme court has spoken, and until it changes its views or the legislature enacts laws to the contrary, we are bound by the utterances of that court. In considering the decisions of our own courts and the courts of sister states following the same rule, there are few decisions dealing with orders entered *pendente lite*, but in discussing such an order as the one before us it has been said: "The order as finally made has the characteristics of a permanent order; in other words, a final judgment." (*Davies* v. *Fisher*, 34 Cal. App. 137 [166 Pac. 833].) With this ruling in thought let us proceed.

"Interpreting and applying the several provisions of the code, the decisions of the courts are clear to the effect that when there has been a decree of divorce and such decree vests the custody of the minor children in the mother, *the father is under no obligation* to provide for such children any support or education *beyond that which may be directed by the court* which has granted the divorce, either in its decree or by subsequent modification." (*Lewis* v. *Lewis*, 174 Cal. 336, 339 [163 Pac. 42].) (Italics ours.)

"When the court granting the divorce and assigning the custody [of the children] to the wife makes, under the authority of the statute, provision for their support out of the husband's estate, he would seem, upon principles already mentioned, to be relieved from all further obligation." (2 Bishop on Marriage and Divorce, 6th ed., sec. 557.)

We quote at length from the case of *Brow* v. *Brightman*, 136 Mass. 187, for the reason that that case and the instant case are nearly on all-fours:

"The plaintiff has boarded and partly cared for the minor child of the defendant for the period of time named in the account annexed to the declaration, namely, three hundred and twelve weeks. Most of that period the mother of the child, who lived with the plaintiff, was away in the day-time at work. During this time the plaintiff cared for the child; but the mother of the child took care of the child at night, and when she was not away at work. A fair price for the board and care furnished by the plaintiff to said child, under all the circumstances of the case, was

an average of three dollars for each week during the whole time. The defendant has paid the plaintiff through his wife $35, which was applied by the plaintiff on this account.

"The board and care was furnished under the following circumstances: The mother, previously to the birth of the child, came to live with the plaintiff, *with the consent of the defendant,* and remained there with her child, with his consent, until the date of the writ. He paid the board of the mother until about five weeks before the child was born. He never lived with the plaintiff. He came to see the child at the plaintiff's house when the child was about ten months old, and never came there afterwards. Subsequently, he removed to Rhode Island, where he has since resided. He never offered to take the child or the mother, or to assume the care of either. On April 21, 1877, the mother, with the knowledge of the plaintiff, but without the knowledge of the defendant, obtained a decree of the Supreme Judicial Court giving her the custody of the child; and, on November 12, 1879, the mother, with the knowledge of the plaintiff, but without the knowledge of the defendant, obtained a decree of divorce from the defendant, with the custody of the child.

"The auditor found that the defendant was liable to the plaintiff for the board and care of the child for 312 weeks at $3 per week, less the $35 paid by him, amounting to $901, with interest from the date of the writ, *unless* the obtaining of said decrees, or either of them, by the mother, relieved the defendant from liability from the time of the granting thereof.

"At the trial in the Superior Court, before *Mason,* J., without a jury, the plaintiff contended that she was entitled to recover the amount found due by the auditor; and she asked the judge to rule. The defendant contended and asked the judge to rule, that, if the plaintiff was entitled to recover at all, she was entitled to recover only from the time her claim began up to the time of the decree of April 21, 1877, or at most up to the time of the decree of November 12, 1879.

"The judge ruled that the plaintiff was entitled to recover only up to the time of the decree of April 21, 1877; and found for the plaintiff in the sum of $175.78. The plaintiff alleged exceptions.

"*Colburn, J.* By the common law of this Commonwealth, the defendant if of sufficient ability, was under obligation to provide for and support his infant child. *Dennis* v. *Clark*, 2 Cush. (Mass.) 347 [48 Am. Dec. 671]. If this case depended upon the common law ability of the defendant, under the facts found by the auditor, the plaintiff would doubtless be entitled to maintain her action. *Reynolds* v. *Sweetser*, 15 Gray (Mass.), 78.

"By the decree of this court in 1877, under the St. of 1874, c. 205, and the further decree of 1879, upon the libel for divorce, the care and custody of his child were taken from the defendant and given to the wife. *With these decrees in force, he had no right, either to take the child and support it himself, or to employ any one else to support it, without the mother's consent. The wife had no authority to bind the defendant by a contract for 'the support of the child, and no contract can be implied upon which the plaintiff can recover in this action.* The remedy to secure such provision for the support of the child as the defendant might have the ability to furnish, was under a decree of this court, which it had ample authority to make, in either of the proceedings before it, as part of the original decree, or at any subsequent time. . . . Exceptions overruled." (Italics ours.)

The supreme court of Maine, after quoting the above language from Bishop, says: "It would be unjust to allow both a common law remedy and the statutory remedy to exist at the same time, and *it would operate too severely on a husband for him to be constantly exposed to action by his divorced wife and also by strangers to recover for him sums expended by them for the support of his children over whom he is not allowed to exercise any control.*" (*Hall* v. *Green*, 87 Me. 122 [47 Am. St. Rep. 311, 32 Atl. 796, 797].) (Italics ours.)

"Where, pending divorce proceedings, an order for the payment of temporary alimony is made upon petition, accompanied by the affidavit of a physician setting out in the bill of particulars the value of his services rendered to the wife and infant child of defendant, the presumption is that in the allowance based on such petition, the physician's bill was included, and that the allowance is a bar to the subsequent action against the husband by the physician for

his services.'' (*Hyde* v. *Leisenring,* 107 Mich. 490 [65 N. W. 536], syllabus 1.)

In the instant case the plaintiff was present in court, knew the amount due her was discussed and that an order of court was made on such evidence before it. The rule in the Hyde case is applicable here.

The earlier case of *Selfridge* v. *Paxton,* 145 Cal. 713 [79 Pac. 425], is therefore in point, especially when we remember that the plaintiff here was aware of the nature of the preliminary orders entered in the divorce case and was present when they were made. In the Selfridge case Bessie Paxton sued Blitz Paxton for divorce and was granted a decree awarding to her the custody of the child, Roma Paxton, but making no provision for Roma's maintenance. Thereafter the plaintiff, a surgeon, with knowledge of the decree, rendered necessary surgical aid to Roma, charged a reasonable amount therefor, sent a bill to the father and thereafter sued him. The court said, on page 715 et seq.:

"It is apparent that the evidence does not show any contract, either express or implied, on the part of defendant Blitz to pay for the said services rendered Roma; and the court does not find any such contract. The finding merely is, that the appellant was notified of the illness of Roma and did not object to respondent's services. The case, therefore, seems to present the naked legal question whether under the law of this state a third person can recover of a father for necessaries furnished his infant child when by a decree of court the care, custody and control of the child has been taken away from him and given to the mother, *who, to the knowledge of the person furnishing the services, is exercising such custody under such decree* [italics ours]; and our opinion is that the question must be answered in the negative. . . . The law as to the liability of a parent for necessaries furnished the child comes within the declaration of section 4 of the Civil Code of this state, that 'The code establishes the law of this state respecting the subjects to which it relates.' The Civil Code, commencing with section 193, under the caption of 'Parent and Child,' clearly 'establishes the law' respecting the rights, duties and liabilities which arise out of that relation; and the law touching the question involved in the case at bar is found in sections 196 and 207. These sections are as follows:

" '196. *Obligations of parents for the support and education of their children.* The parent *entitled to the custody* of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability.'

" '207. *When a parent is liable for necessaries supplied to a child.* If a parent neglects to provide articles necessary for his child *who is under his charge,* according to his circumstances, a third person may in good faith supply such necessaries, and recover the reasonable value thereof from the parent.'

"By these sections the duty to support a child, and the liability to a third person for necessaries furnished it, are clearly confined to a parent 'entitled to the custody' of the child, and having it 'under his charge'; and no such liability attaches to a parent who has been deprived of such custody and charge. . . . In *Ex parte Miller,* 109 Cal. 648 [42 Pac. 429], Justice Temple, in a concurring opinion says: 'When a parent is deprived of the custody of his child, and, therefore, of the right to its services and earnings by a summary proceeding, *he is no longer liable for its support and education.* This is true as a general proposition of law, and it is recognized by our code. Section 196 of the Civil Code provides that a parent entitled to the custody of a child must give him support and education suitable to his circumstances, plainly implying that the parent does not owe that duty to a child when he is not "entitled to its custody." ' And he further refers to section 207 as providing that when a parent neglects to provide the necessaries for a child 'who is under his charge, then the third persons may do so, and recover the value'; and he further says that in no instances except those specially provided for in the code 'has the court power to deprive the parent of his authority and yet hold him liable for the maintenance of his child.' Whatever may be thought as to how the law should be on this subject, we must take it to be as it is written in the code. . . . Of course, the court when rendering a judgment of divorce may provide for, and generally does provide for, the maintenance

of the children of the parties; and it may afterwards so provide when it appears necessary.''

This position of our supreme court has never been reversed, and has been approved in *Pacific Gold Dredging Co.* v. *Industrial Acc. Com.*, 184 Cal. 465 [13 A. L. R. 725, 194 Pac. 1]. To the same effect are *Crittenden* v. *Schermerhorn*, 39 Mich. 661 [33 Am. Rep. 440], *Hyde* v. *Leisenring, supra, Hall* v. *Green*, 87 Me. 122 [47 Am. St. Rep. 31, 32 Atl. 796], and *Ryder* v. *Perkins*, 219 Mass. 525 [107 N. E. 387].

It follows, then, that the provisions of sections 196 and 207 of our Civil Code, as interpreted by our appellate courts as above set forth, were written into any contract between plaintiff and defendant respecting the care of defendant's child, and, therefore, upon the entry of the order for alimony, particularly with plaintiff's knowledge, the contractual relation ceased and the liability of the defendant thereafter limited to the payment of the said order according to its terms. As the court of appeals of Maryland has well said: ''The father was under the common law obligation to support his child during its minority, and this obligation continued without regard to a divorce decree, unless in that decree the court should order that it be supported by someone other than the father. The fact that the court ordered the father to pay $3 per week to the mother for the support of the child in no way affected his common law obligation to support it, *but only prescribed the amount to be paid, and through whom the child was entitled to receive it.*'' (*Blades* v. *Szatai*, 151 Ind. 644 [50 A. L. R. 232, 135 Atl. 841, 842]. Italics ours.) In this case the orders made by the court, with the knowledge of the plaintiff, ''prescribed the amount to be paid and through whom the child [and its creditors] was to receive it.''

Under statutes quite similar to ours the supreme court of Nebraska has held: ''When in a divorce action there has been such a judicial ascertainment of the amount the father should pay for the support of his minor children, that amount is presumed to be just and reasonable until it is reversed or modified by a subsequent order of the court. *The amount thus ascertained,* so long as the decree remains in full force, *is* in this state *the legal measure of the father's liability for the support of his child. . . .* While

the decree in the divorce action awarding the custody of the minor children to the mother and providing for an allowance for their support and maintenance remains in force, the father is not required to provide further clothing or shelter for his minor children, *the measure* in that respect *being the amount provided in the decree.*" (*Dimond* v. *State,* 110 Neb. 519 [194 N. W. 725].)

Although in this case the plaintiff well knew of the divorce proceeding and the alimony orders made thereunder, and is, therefore, bound by that knowledge, it has been held that a father is not liable for medical attention furnished the child by a physician who was ignorant of such state. "Where the husband and wife are living apart, and there are separate maintenance proceedings pending in which there is an order for alimony *pendente lite,* and the husband is not in default on that order, he is not liable for medical services subsequently furnished during the pendency of the suit, and it is immaterial that the physician knows nothing about the litigation, since he is put on inquiry." (*Steele* v. *Leyhan,* 210 Ill. App. 201.) In the instant case the plaintiff not only was put upon inquiry, but had actual knowledge of the orders.

We are, therefore, of the opinion that the judgment of the trial court, in so far as it awards any amount to the plaintiff for services performed and moneys advanced after the order of February, 1921, in the divorce case, is erroneous and should be modified. As we have already stated, prior to said February order in the divorce action there was due the plaintiff the sum of $335 for wages and cash advances, on which was paid the sum of $100 on January 1, 1922, leaving a balance of $235.

It is therefore ordered that the judgment heretofore entered herein be reduced to $235, and that as so modified it be affirmed, each party to pay his own costs on this appeal.

Craig, Acting P. J., and Thompson, J., concurred.