[Civ. No. 574.   Fifth Dist.   Feb. 2, 1966.]

HAROLD E. CHAPIN, Petitioner, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; SHIRLEY ANN CHAPIN, Real Party in Interest.

852

King, Eyherabide, Cooney & Owen and Stephen Eyherabide for Petitioner.

No appearance for Respondent.

Mack, Bianco & Means and D. Bianco for Real Party in Interest.

CONLEY, P. J.—Petitioner seeks a writ of mandate to compel the plaintiff in the case of "Shirley Ann Chapin, now known as *Shirley Ann Giumarra, plaintiff,* v. *Harold Earl Chapin, defendant,*" (Kern County number 47649) to answer certain of defendant's interrogatories, to compel the witness, Bob Murray, to answer questions in a deposition, and to permit petitioner and his counsel to examine books and records in Bob Murray's possession, in a proceeding to determine the present liability of the respective parties to make support payments for their 19-year-old daughter.

The divorce case was filed over 16 years ago and an order was then made awarding the custody of the child to the wife and requiring that the defendant husband pay her $30 a month as child support, unless in a given month the child should receive a government allotment equal to or exceeding $30. This provision was also incorporated in the final decree of divorce entered November 14, 1949; concededly, the defendant has regularly paid that amount ever since. The plaintiff, Shirley Ann Chapin, is now Shirley Ann Giumarra by reason of her second marriage; she has requested an order to show cause why the support provision should not be modified to require her first husband to pay an increased amount for the support of their daughter. The petitioner, through a separate set of documents, has asked that he be relieved completely from any duty to make payment for the maintenance of the child. Orders to show cause were duly issued.

In the defendant's petition for modification of the support order he alleges that her mother has led the daughter to expect many needless material things, that plaintiff and her present husband purchased a new 1964 Super Sports Chevrolet automobile for the child, paid her expenses for a tour of

the United States in 1964 and a trip to Europe in the summer of 1965, and that the girl has been provided by her mother recently with numerous expensive items of clothing. Petitioner avers that plaintiff's second husband earns a salary of over $25,000 a year and that discovery proceedings would show the exact amount of the salary which is community property; he also alleges that plaintiff can well afford to support their daughter in the station of life to which she and her present husband have accustomed the girl, but that he cannot; he has remarried and has two children by his second marriage, 10 and 11 years old, and he says that he is struggling to support that family; he declares also that his daughter by his first marriage is averaging only D+ grades at the Bakersfield College, has been on probation as a student, and really should be employed and earning a salary instead of going to college.

Plaintiff married her present husband, John G. Giumarra, on December 3, 1950; he admittedly has substantial interests in the Giumarra Vineyards Corporation, the Giumarra Brothers Fruit Company, and Giumarra Farms, Inc.; the deposition of Bob Murray, who is in charge of accounting as to these properties and has possession of the books and records, was duly set; in obedience to a subpoena, Bob Murray brought them to the place specified for his deposition, but, on the advice of counsel, he refused to permit defendant or his attorney to examine them, and for the same reason refused to answer numerous questions.

Within the time specified by law, plaintiff served and filed her answers to defendant's interrogatories; plaintiff objected to numerous interrogatories on the grounds that the questions were immaterial, because, as she correctly asserts, her present husband is not personally obligated to support a child by a former marriage. Petitioner thereupon filed a motion in the trial court to compel answers to the interrogatories and the deposition questions and for a view of the subpoenaed documents; a hearing was held in the superior court, and, while granting some minor relief, the court in effect denied defendant's motion. Petitioner argues that the superior court order deprived petitioner of a substantive right to discovery, and that he is hindered in preparing for the hearing of the orders to show cause.

▆▆ The petitioner has adopted a correct procedure to test his right to discovery at this time. There is no separate appeal from the rulings of the trial court preventing dis-

covery in depth as requested by the petitioner; if the petitioner is correct in his position, it would be the height of folly to require him to wait until a possible adverse judgment after the trial of the case in order to urge on appeal that discovery was improperly refused. (*McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944]; *Dowell* v. *Superior Court,* 47 Cal.2d 483, 486 [304 P.2d 1009]; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 50, p. 2532 and [1965 Supp.] pp. 986-987.)

Petitioner maintains that Shirley Ann (Chapin) Giumarra has "profited financially" from her second marriage and that the court may consider this fact on the issue of the amount of child support defendant and plaintiff should pay, citing *Cagwin* v. *Cagwin,* 112 Cal.App.2d 14 [245 P.2d 379], that for purposes of discovery, relevancy to the *subject matter* of the pending action is the test (*Coy* v. *Superior Court,* 58 Cal.2d 210, 217 [23 Cal.Rptr. 393, 373 P.2d 457]), and that such relevancy is "a broader concept than relevancy to the issues" (*Pettie* v. *Superior Court,* 178 Cal.App.2d 680, 687 [3 Cal.Rptr. 267]). Possible inadmissibility of subject matter at the trial is not a ground for objection here if the testimony sought appears "reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2016, subd. (b); *Chronicle Pub. Co.* v. *Superior Court,* 54 Cal.2d 548, 560 [7 Cal.Rptr. 109, 354 P.2d 637].) Petitioner maintains that he has the right to information concerning the nature and extent of bank accounts so that the source of deposits may be traced to ascertain whether the moneys on deposit are the separate or community property of plaintiff, and if community property, the extent of Mrs. Giumarra's community interest. (*DeMayo* v. *Superior Court,* 189 Cal. App.2d 392 [11 Cal.Rptr. 157].)

Section 196 of the Civil Code provides as follows: "The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability." Mrs. (Chapin) Giumarra was awarded custody of the minor child. There is authority to the effect that the trial judge should give appropriate weight to this fact. (*Blair* v. *Williams,* 86 Cal.App. 676 [261 P. 539]; *In re Perry,* 37 Cal.App. 189 [174 P. 105]; *People* v. *Champion,* 30 Cal.App. 463 [158 P. 501].) ■ It is sometimes said that the duty to support a child rests primarily upon the father

(*Metson* v. *Metson,* 56 Cal.App.2d 328 [132 P.2d 513]; *Blair* v. *Williams, supra,* 86 Cal.App. 676), due to the fact that the father is said by law to be the head of the family (*Metson* v. *Metson, supra,* 56 Cal.App.2d 328, 333; Civ. Code, § 156; *Fox* v. *Industrial Acc. Com.,* 194 Cal. 173 [228 P. 38]), but it is certain that, in proper circumstances, both parents owe a duty to support their child. As was said in an opinion written by Mr. Justice Mosk in the recent case of *Nunes* v. *Nunes,* 62 Cal.2d 33, 39 [41 Cal.Rptr. 5, 396 P.2d 37]: ''The trial court has the power to require either father or mother or both to assist in the support of minor children (Civ. Code, § 196) and the community property, quasi-community property and the separate property may be subjected to the support of children (Civ. Code, § 143).'' ■ Certain it is that the parent of a minor child is primarily liable for the child's support and should be compelled to maintain the minor unless legally excused from that burden (*Fagan* v. *Fagan,* 43 Cal.App.2d 189 [110 P.2d 520]), and it is equally certain that a mother as well as a father is charged with a duty to protect, nurture, and educate the child (*White* v. *White,* 71 Cal.App.2d 390 [163 P.2d 89]).

■ A parent's duty of support does not necessarily end with the furnishing of mere necessities; a minor child is entitled to be maintained in a style and condition consonant with his parents' position in society; this duty of support is not even affected if the child is self-supporting or possessed of ample means of her own. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.,* 81 Cal.App.2d 37 [183 P.2d 344]; *Guardianship of Ceas,* 134 Cal. 114 [66 P. 187].) From time to time, as the minor grows older and needs additional contributions for support, such amended financial arrangements must ordinarily include provision for a suitable education in accordance with the ability of the parents.

■ However, when a divorced woman of moderate circumstances marries a rich man, it does not follow that an increased payment should become due from the first husband for the maintenance of a child of the first marriage in the mother's custody, merely to keep pace with the rich stepfather's manner of living. In a proceeding of this kind, the court must consider all of the elements that bear on the problem, and the first husband should not be forced to maintain his offspring in a manner that is clearly incompatible with his own way of life. We make these comments in passing, but are fully aware that the duty will fall upon the trial court to

weigh all of the evidence as to the various factors involved and to come to a proper conclusion; it is not our function to review in advance any ruling on this subject which may be made by the trial court after it has heard all of the evidence.

■ Generally speaking, the second husband is not bound in the absence of special and extraordinary circumstances to maintain his wife's children by a former husband from whom she has been divorced. (Civ. Code, § 209.) ■ The second husband, of course, has the right to control the community property of the second marriage (Civ. Code, § 172), but this does not release the mother of the child from a duty to use whatever her separate or community interest in the assets gained in the second marriage may be to support the child, if in the opinion of the trial court such provision is required by reason of the present facts.

It should be noted that recent legislation has made a stepfather responsible for the support of needy children of his wife by a prior marriage through payments from his wife's share of their community property. This requirement, a part of section 11351 of the Welfare and Institutions Code, reads as follows: "Notwithstanding the provisions of Section 209 of the Civil Code, a stepfather . . . is bound to support, if able to do so, his wife's children if without support from such stepfather . . . they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income."

In 2 Armstrong, California Family Law, [1961 Supplement to page 1138], there is the following comment as to the effect of the amendments in 1953 and 1955 to section 1508 (now § 11351) of the Welfare and Institutions Code: "This would seem a reasonable degree of responsibility to put upon him in the light of the mother's obligation to support her children, when the father cannot (or does not), coupled with her vested property right in one-half of the community's assets which is under the stepfather's control."

The real party in interest contends that the community property of Mrs. Giumarra and her husband is under the sole administrative power of Mr. Giumarra and that the appropriate court could not possibly require a division of the community property as the result of an order that Mrs. Giumarra should support her minor child by a former marriage, who is not technically a needy child. In *Smedberg* v. *Bevi-*

*lockway*, 7 Cal.App.2d 578, 581 [46 P.2d 820], it is said: "However, as above stated the plaintiffs seek to hold the wife's interest in the community property in liquidation of said judgment. Can it be so segregated and applied? At the instance of the wife her interest could be segregated by a mutual contract between her and her husband (Civ. Code, § 158); or in a divorce action (Civ. Code, § 146); or a separate action based on a divorce action (*De Godey* v. *Godey*, 39 Cal. 157); or, on her death, by reason of the provisions of her will. (Prob. Code, § 201.) Our statutes provide no other methods. There are authorities to the effect that neither husband nor wife, except as we have recited, can force a division of the community property by partition (Freeman on Partition and Co-Tenancy, § 445), nor by a proceeding in equity. (*Martin* v. *Martin* (Tex. Com. App.) 17 S.W.2d 789.)'' (See also 4 Witkin, Summary of Cal. Law (1960) Community Property, section 63, page 2764.)

In contending that the mother's community interest under the second marriage could not be utilized for the purpose of supporting her minor child by a former marriage, the real party in interest cites the case of *Grace* v. *Carpenter*, 42 Cal.App.2d 301, 302 [108 P.2d 701], which concerned section 206 of the Civil Code as to the duty to support a parent and 42 Opinions of the Attorney General of California, page 92, wherein is cited *County of Contra Costa* v. *Lasky*, 43 Cal.2d 506, 509 [275 P.2d 452]. The latter case deals with the question of whether or not the husband of a blood relative of an elderly person needing aid must contribute to such aid from community property. The law relating to these two sets of circumstances is different. Compare sections 12101 and 11351 of the Welfare and Institutions Code.

This question has never been specifically settled; it is possible that it might be held, at an appropriate time, that the second husband must make payment from the wife's share of the community property if she is ordered to support her daughter. Furthermore, it might well be that if the court should find that the wife must pay for, or contribute to, the support of the child of the first marriage whose custody was given to her, the second husband might voluntarily pay out of the wife's share of the community property whatever would be necessary to comply with the order.

But it is not essential that this question be settled in advance. For there is no doubt that the trial court, in a proper case, may order the wife to support, in whole or in part, the

child of her first marriage, and that principle is sufficient to compel a decision of the issues raised by the present petition.

In preparing for a determination of the question whether he or his divorced wife must pay additional sums, or whether he should be excused from paying anything, for the support of their child, it is proper to make inquiry by discovery proceedings concerning both the separate and community property of the wife arising from her second marriage.

It is ordered that a writ of mandate issue, as prayed, directing the trial court to require further answers to all interrogatories (exhibit "B" attached to the petition) except (1) interrogatories 2 and 3, as to which the trial court has required answers; and (2) interrogatories 17 to 30 inclusive, 32, 33, and 36 to 45, inclusive (which have already been answered), and to order a continuation of the deposition of Bob Murray, with directions to him to answer the questions specified in the petition relative to the ownership by the real party in interest of community and separate property by reason of her second marriage, and that the said witness, Bob Murray, produce the writings referred to in the petition and in the subpoena duces tecum except those already exhibited pursuant to the trial court's order and permit the inspection thereof by petitioner and his attorney, all in accordance with this opinion.

Brown (R.M), J., concurred.

Stone, J., being disqualified, did not participate.