[Civ. No. 2951. Fifth Dist. Nov. 2, 1976.]

ERNEST J. BAKMAN et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
CITY OF FRESNO, Real Party in Interest.

COUNSEL

Fadem, Berger & McIntire, Michael M. Berger, Michael V. McIntire and Lerrigo, Thuesen, Walters, Nibler & Hendrick for Petitioners.

No appearance for Respondent.

Spencer Thomas, Jr., City Attorney, James A. McKelvey, Chief Assistant City Attorney, A. H. Einbinder, Deputy City Attorney, Hoge, Fenton, Jones & Appel, Charles H. Brock, and H. R. Lloyd, Jr., for Real Party in Interest.

OPINION

GARGANO, J.—This proceeding to review an order of the Superior Court of Fresno County overruling petitioners' objections to written interrogatories presents a novel and fundamental question: Does the First Amendment right of freedom of association shield persons who attend group or organizational meetings, which ultimately result in the institution of a lawsuit against a public agency, from disclosing the identity of all persons who may have attended such meetings, and who might present favorable evidence on behalf of the public agency, even though the disclosure otherwise would be required by the California Discovery Act?

Petitioners are 70 homeowners who own homes in the vicinity of the Fresno Air Terminal; the terminal is an airport owned and operated by real party in interest City of Fresno (hereafter sometimes referred to as real party).

On March 29, 1974, petitioners instituted a civil action in the Superior Court of Fresno County (superior court action No. 163451) against real party, seeking to recover damages for the diminution in the market value of their respective properties, and for personal injuries and emotional disturbances caused by aircraft noise, vibrations, fumes and soot resulting from the operation of the Fresno Air Terminal. The action was predicated upon several theories, including inverse condemnation and nuisance.

On March 1, 1975, real party served petitioners with a 21-page set of written interrogatories covering numerous aspects of the litigation. The interrogatories, among other inquiries, contained the following questions:

"19. Have you attended any meetings of any groups or organizations, either formal or informal, concerned with the problem of alleviating or reducing noise generated by the operations of [the Fresno Air Terminal]?

"20. If the answer to Interrogatory Number 19, above, is affirmative, state the following:

a. The name of each and every group or organization;

b. The dates you attended any meetings;

c. The purpose of the meetings;

d. The names and addresses of all persons who attended each meeting.

"21. Identify by name and address and names and addresses of officers each and every organization or group that you belong to or are a member of which is concerned with alleviation or reduction of noise generated by [the Fresno Air Terminal].

". . . . . . . . . . . . . . . . . . . .

"55. What are the names and addresses of every doctor you have seen in the past ten years, including but not limited to chiropractors, osteopaths, or any other type of healer.

"56. Have you ever filed a claim or received compensation of any nature from anyone for injuries to your person or damages to your property, other than the present claim?

"57. If the answer to the previous Interrogatory is in the affirmative, state the name of the person from whom you claimed damages, his address, the date of the claim, the nature of the claim, and the amount received by you in settlement of your claim or other disposition thereof."

Petitioners answered interrogatories 19, 20(a), 20(b) and 20(c); they refused to answer interrogatories 20(d) and 21 on the ground that the inquiries violated the First Amendment right to freedom of association. Petitioners also answered interrogatory 55, but refused to answer interrogatories 56 and 57; they objected to questions 56 and 57 on the grounds that they were overbroad, vague, ambiguous, irrelevant, harassing and embarrassing. ■ ■■■ Thereafter, the court entered an order overruling petitioners' objections, and required petitioners to answer the interrogatories; this petition for writ of mandate followed.[1]

We consider, first, petitioners' contention that the court's order overruling their objection to, and requiring them to answer, interrogatories 20(d) and 21 was in contradiction of the First Amendment of the United States Constitution.

■ It cannot be denied that the protections of the First Amendment to the United States Constitution on freedom of speech and expression extend to the right of association. (*Healy* v. *James* (1972) 408 U.S. 169, 181 [33 L.Ed.2d 266, 279-280, 92 S.Ct. 2338, 2346]; *Baird* v. *State Bar of Arizona* (1971) 401 U.S. 1, 6 [27 L.Ed.2d 639, 646-647, 91 S.Ct. 702, 706]; *Louisiana* v. *N.A.A.C.P.* (1961) 366 U.S. 293, 296 [6 L.Ed.2d 301, 304, 81 S.Ct. 1333, 1335].) The federal Constitution, in short, protects associational freedoms without regard to race, creed, or political or religious affiliation and without regard to the truth, popularity or social utility of the ideas and beliefs. (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 444-445 [9 L.Ed.2d 405, 424-425, 83 S.Ct. 328, 344].) However, the First Amendment protection is not absolute and must yield to more compelling state interests. (*Konigsberg* v. *State Bar* (1961) 366 U.S. 36, 49-51 [6 L.Ed.2d 105, 115-117, 81 S.Ct. 997, 1006-1007]; *Barenblatt* v. *United States* (1959) 360 U.S. 109, 126-127 [3 L.Ed.2d 1115, 1128-1129, 79 S.Ct. 1081, 1093].) ■ Thus, when associational freedoms come in conflict with the exercise of valid governmental powers, a reconciliation must be effected between the two competing interests through a careful weighing process; if the state action has the clear effect of deterring associational

[1]"Prohibition rather than mandamus is the proper remedy where the lower court allegedly abuses its discretion in permitting or ordering further discovery. (*Oceanside Union School Dist.* v. *Superior Court* 58 Cal.2d 180, 185 [23 Cal.Rptr. 375, 373 P.2d 439]; *Twin Lock, Inc.* v. *Superior Court,* 52 Cal.2d 754, 758 [344 P.2d 788].) However, where the allegations are broad enough to encompass the appropriate remedy, as is the case in the instant proceeding, the petition will be treated as a petition for such relief. (*Proctor & Gamble Co.* v. *Superior Court,* 124 Cal.App.2d 157, 162 [268 P.2d 199]; *Los Angeles Transit Lines* v. *Superior Court,* 119 Cal.App.2d 465, 468-469 [259 P.2d 1004].)" (*Bunnell* v. *Superior Court* (1967) 254 Cal.App.2d 720, 721, fn. 1 [62 Cal.Rptr. 458].)

ties and relationships, the state must show, convincingly, an overriding and compelling interest for the disclosure sought. (*Baird* v. *State Bar of Arizona, supra,* 401 U.S. 1, 6-7 [27 L.Ed.2d 639, 646-647, 91 S.Ct. 702, 706]; *Gibson* v. *Florida Legislative Comm.* (1963) 372 U.S. 539, 546 [9 L.Ed.2d 929, 935, 83 S.Ct. 889, 892]; *Konigsberg* v. *State Bar, supra,* 366 U.S. 36, 50-51 [6 L.Ed.2d 105, 116-117, 81 S.Ct. 997, 1007]; *N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449, 463 [2 L.Ed.2d 1488, 1500, 78 S.Ct. 1163, 1172]; *Huntley* v. *Public Util. Com.* (1968) 69 Cal.2d 67, 74 [69 Cal.Rptr. 605, 442 P.2d 685].)

We recognize at the threshold that in this case, neither the state interest nor the state action is traceable to the fact that real party is a city. Real party is the defendant in the lawsuit petitioners instituted in the court below and must be treated in the same manner as any other litigant would be treated under the same or similar circumstances. ■ Nevertheless, it is apparent that if the questions petitioners refused to answer impinge upon the constitutional right of freedom of association, that impingement is brought about by state action. Petitioners were ordered to answer the interrogatories by the superior court, and the court is an arm of the judicial branch of state government. (See *Tribune Review Pub. Co.* v. *Thomas* (W.D. Pa. 1954) 120 F.Supp. 362, 369; cf. *Shelley* v. *Kraemer* (1948) 334 U.S. 1, 14 [92 L.Ed. 1161, 1181, 68 S.Ct. 836, 842, 3 A.L.R.2d 441].) In addition, the court's order was made under the authority of the California Discovery Act, and this act was adopted by the California Legislature. ■ The essential questions presented in this proceeding, therefore, are whether associational ties and relationships will be deterred by requiring petitioners to answer interrogatories 20(d) and 21, and if so, whether the record establishes an overriding, compelling state interest in requiring petitioners to respond to the questions they refused to answer.

■ Preliminarily, the California Discovery Act has a salutary public purpose; it was adopted by the Legislature to expedite litigation between citizens; to insure the dispensation of justice by state courts through the elimination of false or baseless claims and to place litigants on an equal footing. The state, obviously, has a compelling state interest in the utilization of this law by litigants and in its enforcement by state courts. As the California Supreme Court succinctly explained in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266], the California Discovery Act ". . . was intended to accomplish the following results: (1) to give greater assistance to the parties in

ascertaining the truth and in checking and preventing perjury; (2) to provide an effective means of detecting and exposing false, fraudulent and sham claims and defenses; (3) to make available, in a simple, convenient and inexpensive way, facts which otherwise could not be proved except with great difficulty; (4) to educate the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements; (5) to expedite litigation; (6) to safeguard against surprise; (7) to prevent delay; (8) to simplify and narrow the issues; and, (9) to expedite and facilitate both preparation and trial. [Fn. omitted.]"

We consider petitioners' contention that the lower court's order contravenes the First Amendment right of freedom of association with the objects and purposes of the California Discovery Act in mind.

■ Turning first to petitioners themselves, it seems clear to us that they have no valid basis to object in *their* own right. Petitioners are attempting to recover substantial damages for injuries to person and property allegedly caused by real party's operation of the Fresno Air Terminal. Furthermore, real party has demonstrated that the information it is seeking to obtain is relevant to the subject matter of petitioners' lawsuit and might lead to the discovery of pertinent and admissible evidence in its favor. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 172-173 [84 Cal.Rptr. 718, 465 P.2d 854].) For example, it is real party's position that petitioners not only failed to comply with the claims statute as to some of the causes of action alleged in their complaint, but that their lawsuit is barred by the statute of limitations. It is also real party's position that petitioners brought the action in the court below for the purpose of pressuring real party into giving them more money for their properties which real party was attempting to acquire. Consequently, real party seeks to interrogate the officers of the organizations or groups which are concerned with the alleged nuisance problems caused by the operation of the Fresno Air Terminal and all persons who attended the meetings of such groups or organizations to determine whether petitioners engaged in discussions or made admissions that could be used by real party as substantive or impeaching evidence in connection with its defenses.

It is patent that by bringing the lawsuit, petitioners voluntarily subjected themselves to the judicial process, and discovery procedures are an inherent part of that process. In fact, to hold that petitioners can resort to the judicial process in the form of bringing a suit for damages

seeking redress against real party for alleged wrongs it committed against them, and at the same time—without a showing of detriment of any kind—absolutely shield *themselves* from the city's legitimate utilization would distort the salutary basis upon which the First Amendment right of freedom of association is grounded.

However, our inquiry does not end with the determination that petitioners have no valid basis to object in *their* own right. The information real party is seeking to discover, and the only information petitioners refused to divulge, is the identities of persons who did not join in petitioners' lawsuit. It follows, necessarily, that it is the constitutional right of these persons that petitioners are really asserting in this proceeding and which must be considered by this court; otherwise, it would be possible for the rights and safety of others to be jeopardized merely because one person, who has a grievance against a public agency, has filed a lawsuit against that agency; this possibility would have a chilling effect on a precious, though qualified, constitutional freedom. (See *N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. 449, 458-460 [2 L.Ed.2d 1488, 1497-1498, 78 S.Ct. 1163, 1170].)

The issue narrows to whether real party's statutory right to pursue legitimate discovery procedures and the state's compelling interest in the enforcement of such procedures outweighs the deterring effect the disclosure sought has upon the First Amendment right to freedom of association of the persons whose identities real party is seeking to discover, so that it can be said, fairly, that *under the facts of this case* the qualified constitutional privilege must yield to a more compelling state purpose. We have concluded that the answer to this question is in the affirmative.

This is not a situation in which a city or any other governmental agency is seeking the identity of the officers and members of a group or organization, and the identities of all persons who attended its meetings, merely to subserve some tangential governmental purpose as was the case in the decisions relied upon by petitioners. (See e.g., *N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. 449.) As we have indicated repeatedly, while real party is a city, it is seeking the identities of the persons in question in its capacity as a litigant in a lawsuit which was not of its own choosing, and in an effort to discover favorable evidence to be used in that lawsuit.

In addition, the meetings held by organizations or groups concerned with the alleviation of the problems allegedly caused by the Fresno Air Terminal apparently were held for, and succeeded in, generating the lawsuit which was ultimately brought against the city; petitioners do not even deny that the meetings were attended by attorneys acting in an advisory capacity.[2] As a consequence, all of the persons who participated in those meetings are potential witnesses.

Lastly, there is no evidence in this record to suggest that the disclosure of the identities sought by the city might result in "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility" which would deter present members from associating and dissuade others from joining. (*N.A.A.C.P.* v. *Alabama, supra,* 357 U.S. 449, 462-463 [2 L.Ed.2d 1488, 1499-1500, 78 S.Ct. 1163, 1172]; see also *Bates* v. *Little Rock* (1960) 361 U.S. 516, 523-524 [4 L.Ed.2d 480, 485-486, 80 S.Ct. 412, 417]; *Huntley* v. *Public Util. Com., supra,* 69 Cal.2d 67, 72-73.) On the contrary, for all the record shows, any person whose name is disclosed to real party will not be burdened, harassed, or embarrassed any more than any other potential witness in a lawsuit is burdened, harassed, or embarrassed by the taking of a deposition or by being called as a witness.

While the disclosure of the names sought by the city will have a minimal deterring effect on the right of freedom of association, clearly, under the facts of the instant case this minimal effect is outweighed substantially by the objects and purposes of the California Discovery Act.[3]

■ We consider next the remaining interrogatories petitioners refused to answer (questions 56 and 57) with the observation that, as we view these inquiries, they do not require petitioners to reveal their "lifetime history of . . . physical and emotional health," as they suggest. As a whole, the inquiries are designed merely to elicit information to determine whether any of the petitioners are "professional" litigants; these interrogatories are directed, solely, toward information pertaining

[2]We have no occasion in the instant proceeding to pass upon the possible application of the lawyer-client privilege as to what went on at these meetings.

[3]Petitioners have not argued, and there is nothing in the record before us to suggest, that the information sought by real party in interrogatories 20(d) and 21 can be obtained by more narrow means. (See *Shelton* v. *Tucker* (1960) 364 U.S. 479, 488 [5 L.Ed.2d 231, 237, 81 S.Ct. 247, 252]; see also *NAACP* v. *Alabama* (1964) 377 U.S. 288, 307-308 [12 L.Ed.2d 325, 338-339, 84 S.Ct. 1302, 1314]; *Huntley* v. *Public Util. Com., supra,* 69 Cal.2d 67, 77.)

to claims filed or compensation received by any of the petitioners for personal injuries or property damages. (See Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) § 5.30, p. 403 (suggested interrogatory 16).) When viewed in this light, it cannot be said that the court abused its discretion in finding the interrogatories relevant and in ordering petitioners to answer them. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378-380.) As the court explained in *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 173: ". . . the relevance of the subject matter standard must be reasonably applied; in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery (cf. *Chapin* v. *Superior Court* (1966) 239 Cal.App.2d 851, 855-859 [49 Cal.Rptr. 199]). Given this very liberal and flexible standard of relevancy, a party attempting to show that a court abused its discretion in finding material relevant for purposes of discovery bears an extremely heavy burden. An appellate court cannot reverse a trial court's grant of discovery under a 'relevancy' attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial." (Fns. omitted.)

The order to show cause is discharged and the petition for writ of prohibition is denied.

Brown (G. A.), P. J., concurred.

FRANSON, J.—I concur in the denial of the writ of prohibition but I do so on the ground that on the record before us petitioners have failed to show that their First Amendment rights to freedom of speech, assembly or association have been jeopardized in any way. Thus, it is unnecessary to place the First Amendment and the California Civil Discovery Act in juxtaposition for the purpose of weighing their relative merits on the constitutional scale.

I would simply hold that by filing the instant action petitioners have consented to the discovery of the names and addresses of persons who, with petitioners, attended any meetings or organizations concerned with the alleviation or reduction of noise generated by the operations of the

Fresno Air Terminal. I find nothing in *N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163] which compels a contrary rationale. That case recognizes only that compelled disclosure of membership in organizations engaged in advocating a particular religious or dissident belief is constitutionally impermissible as infringing on the right of association absent some overriding state interest. I see no such issue in the case before us.

A petition for a rehearing was denied December 2, 1976, and the opinion was modified to read as printed above. Petitioners' application for a hearing by the Supreme Court was denied January 5, 1977. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.