Filed 4/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM B. LOOK, JR., | H044754 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 2015-1-CV-277345) |
| v. | |
| BELA PENOVATZ, | |
| Defendant and Respondent. | |

Appellant William Look, Jr. appeals an order of the trial court denying his request for reimbursement under Family Code section 3950[1] for funds he expended while Respondent Bela Penovatz's then-minor son lived in Look's household. During the relevant period, Penovatz (the child's father) paid child support, pursuant to a court order, to the child's mother, who cohabitated with Look. As Penovatz satisfied his child support obligation under the law, we conclude Look was not entitled to reimbursement under Family Code section 3950,[2] and thus affirm the trial court's judgment.

---

[1] "If a parent neglects to provide articles necessary for the parent's child who is under the charge of the parent, according to the circumstances of the parent, a third person may in good faith supply the necessaries and recover their reasonable value from the parent." (Fam. Code, § 3950.)

[2] All future undesignated references are to the Family Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Factual Background*

In 2016, the trial court, in a bench trial, heard evidence regarding Look's claim for reimbursement for money he alleged he expended supplying necessaries to Penovatz's son, Christopher. Based on that evidence, the trial court issued a statement of decision and judgment[4] in December 2016, finding in favor of Penovatz and denying relief to Look. The court heard testimony from Look, Penovatz, Christopher, and Wendy Rothert, Christopher's mother. We glean the following from the record created during the trial.

Penovatz and Rothert dissolved their marriage in 2006 in San Benito County. In April 2006, the San Benito County court entered an amended judgment on reserved issues that included orders requiring Penovatz to pay child support to Rothert for Christopher, born in 1997, based on Penovatz having 69 percent timeshare with Christopher, and Rothert having 31 percent. The court also ordered both parties to maintain health insurance coverage for Christopher, but noted Rothert did not have such coverage available at the time of the judgment. In 2007, the court modified Penovatz's child support obligation, such that he owed Rothert $400 per month, based on the same time share percentages set forth in the judgment. Christopher's primary residence was with Penovatz in Hollister.

At the end of 2010 or beginning of 2011, Rothert began living with Look in Carmel Valley. Look described his relationship with Rothert as a "domestic partnership"

---

[3] Given the limited scope of the ruling set forth in Section II of this opinion, *post*, we focus this discussion on the factual and procedural history relevant to our ruling.

[4] Although Look included the judgment in his amended notice designating the record on appeal, it is not part of the clerk's transcript provided to this court; the clerk's transcript includes only the statement of decision and the minute order from the hearing at which the court denied a motion for new trial. Look provided a filed copy of the judgment with the "Civil Case Information Statement" filed in this appeal, which he served on Penovatz's counsel by mail. On its own motion, the court augments the record to include the judgment. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

and "essentially [a] husband and wife relationship." Look and Rothert did not have a formal agreement requiring Rothert to contribute to living expenses; she would contribute on a voluntary basis what she could, when she could. Look did not expect Rothert to repay him for room or board. In August 2011, Penovatz and Rothert agreed to change the custody arrangement so that Rothert and Look's home would become Christopher's primary residence. Christopher lived with Rothert and Look from that time through his graduation from high school in June 2015, and still lived there at the time of the trial in this matter in August 2016.

During their conversations about changing custody, Penovatz and Rothert discussed modification of the child support order. They disagreed at trial as to whether they reached resolution of the issue. Penovatz believed they signed a written agreement to increase his support payment to $540 per month; he claimed his attorney drafted a stipulation based on the parties' agreement regarding support and custody, which he and Rothert signed, along with their attorneys. Rothert's attorney took the agreement, with the understanding he would file it with the court, but Penovatz never received any court-filed documents modifying the previous orders. Penovatz contended Rothert never sought to enforce the informal agreement to increase support to $540; nor did she or Look ever ask Penovatz directly for additional contributions to Christopher's living expenses.

Rothert denied reaching any agreement regarding child support; she contended $540 was an offer made by Penovatz, to which she made a counteroffer of over $1,500 monthly, through her attorney. Look argued this counteroffer represented statutory child support.[5] Rothert said "nothing" happened after the attorney made that counteroffer. She

_____

[5] Section 4055 sets forth the formula for the "statewide uniform guideline for determining child support orders . . . ," often referred to as "guideline" or "statutory" child support. "The amount of child support established by the formula provided in subdivision (a) of [s]ection 4055 is presumed to be the correct amount of support to be ordered." (§ 4057, subd. (a).)

denied signing an agreement to modify child support to $540 per month; the only agreement she signed was one concerning custody. There was no dispute Penovatz and Rothert never obtained a court order increasing Penovatz's child support obligation. Penovatz continued to pay $400 per month and provide health insurance for Christopher through his graduation from high school in June 2015.[6]

Look testified at trial regarding his reasons for not encouraging Rothert to seek a court order increasing Penovatz's child support obligation. He alleged Penovatz "childnapped" Christopher from Carmel High School and took him back to Hollister once he learned statutory child support would be over $1,500 per month. Look contended Penovatz only allowed Christopher to return once he believed Rothert agreed to accept a lower amount of child support.[7] Penovatz and Christopher both have Serbian passports, and Penovatz owned property in Serbia; Look was concerned Penovatz would again detain Christopher, or perhaps remove Christopher to Serbia, if Rothert persisted in seeking increased support. Moreover, Look alleged Rothert could not afford to continue having an attorney represent her.[8] Look testified it was "[his] decision not to force the decision on the support and just continue[] supporting [Christopher]." Therefore, Christopher continued to live primarily with Rothert and Look,[9] and Penovatz continued to pay child support pursuant to the 2007 child support order.

---

[6] Under section 3901, subdivision (a)(1), a parent's child support obligation terminates by operation of law once the child is 18 and no longer a full-time high school student.

[7] Penovatz admitted he removed Christopher from the high school in Monterey and brought him back to Hollister, indicating he did so because the parties had not reached an agreement regarding custody, such that his attorney advised him to comply with the dissolution orders giving him primary custody of Christopher.

[8] Look is an attorney, representing himself in this appeal; he testified he did not believe it appropriate to represent Rothert regarding the support issue between her and Penovatz given the potential conflict of interest if Look had to be a witness.

[9] Christopher had visitation with Penovatz while he lived with Rothert and Look.

## B. Procedural History

Although not part of the record on appeal, there is no dispute Look filed a complaint against Penovatz for relief under section 3950 in February 2015.[10] After the trial court overruled his demurrer, Penovatz answered the complaint.

Look served form interrogatories on Penovatz; relevant to this appeal, he asked Penovatz for information about his income in the last three years, including asking for copies of his last three tax returns. Penovatz objected to the interrogatories on privacy grounds, among other reasons. In July 2015, Look filed a motion to compel Penovatz's further responses to the interrogatories, arguing information about Penovatz's employment and rate of pay were relevant to the issue of reimbursement under section 3950, as it fell within the statutory scheme governing child support, and the requested information concerned whether Penovatz "failed to pay support according to his circumstances . . . ." Penovatz opposed the motion.

The trial court denied Look's motion to compel as it pertained to the financial information, finding Look failed to meet his burden to show that the requested information was relevant to a claim or defense in the action. Stating that "it is well established that an individual has a legally protected privacy interest in his or her financial affairs," the court determined the burden fell on Look to "demonstrate that the information sought is 'directly relevant' to a claim or defense, 'essential to the fair resolution of the lawsuit,' and not available through less intrusive means." The court believed Look was arguing that he had to prove Penovatz "neglected to provide adequate support despite the ability to do so," such that he needed to "discover [Penovatz's]

---

[10] Neither party designated Look's complaint as part of the record on appeal. The trial court, in ruling on a motion by Look to compel further interrogatory responses from Penovatz, summarized the allegations made in the complaint, and stated the one cause of action asserted therein as follows: "The complaint asserts one cause of action for recovery of the necessities of life furnished to a minor pursuant to Family Code section 3950."

financial information to demonstrate that [Penovatz] had the ability to pay for Christopher's housing, food, clothing, and medical and school expenses." However, as Look cited legal authority indicating the inability to pay child support was a defense to an action for violation of a judicial order, the court found the authorities "inapplicable because this [was] not an action for violation of a judicial support order." Because Look did not cite any authority indicating inability to pay was a defense to a cause of action under section 3950, and because Penovatz did not allege in his answer that he lacked the ability to pay for Christopher's common necessaries of life, the court denied Look's motion to compel as it pertained to the requests for financial information.[11]

In August 2016, the court held a two-day bench trial, at which Look, Penovatz, Christopher, and Rothert testified. The court issued its statement of decision in favor of Penovatz. Relevant to this opinion, the trial court found, once Christopher moved in with Rothert and Look, "[c]ustody and support orders were never modified with the court." Penovatz and Rothert, with their attorneys, negotiated an increase in support to $540 per month, but there was no record that Rothert or her attorney signed a written agreement. Rothert did not file any of the alleged custody or support agreements with the trial court, nor did she file "a subsequent motion or order to show cause to modify child support or custody." Penovatz "continued to pay child support of $400 per month pursuant to the court order on file and [Rothert], despite the negotiations, never requested that [Penovatz] pay more than said amount. [Penovatz] has always paid the court ordered child support until the time that Christopher turned 18 and completed high school." The trial court did not give credence to Look's allegations that Rothert failed to seek modification of child support based on a fear Penovatz would abduct Christopher to Serbia, or because she could not afford an attorney. Thus, the court found, "[t]here was no credible evidence to support a finding that Ms. Rothert was precluded from filing a motion to modify child

---

[11] The court granted the motion in part as to requests not at issue in this appeal.

support, if it was warranted. Accordingly, the court concludes that Ms. Rothert could have, but did not file a motion to modify child support."

Based on the evidence, the trial court determined Penovatz did not neglect Christopher, noting, amongst other things, "there was no dispute that [Penovatz] has always paid child support as ordered by the court." The court further found, "[Look's] lawsuit appears to be an attempt to seek a modification of child support on behalf of Ms. Rothert retroactive to 2011. However, a modification may be retroactive at most, to the date of service of a motion or order to show cause. Fam. Code §3653(a).[12] This matter was filed in February 2015. The law does not provide and equity would not be served if Plaintiff were allowed to step in the shoes of Ms. Rothert or if he were awarded relief that she would not be entitled [*sic*]." (Fn. omitted.)

The court contemporaneously entered judgment in favor of Penovatz, finding Look should "recover nothing by way of his complaint." The court reiterated, "[Penovatz] always paid court ordered child support to Christopher's mother." Look timely noticed this appeal following entry of the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1); Cal. Rules of Court,[13] rule 8.104(a)(1).)

## II. DISCUSSION

Look argues the trial court erred in its application of section 3950. He also contends the trial court erred in denying his pre-trial requests for additional discovery related to Penovatz's financial circumstances. In his reply brief, Look argues this court should disregard Penovatz's responsive brief based on his failure to comply with

---

[12] "An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date, except as provided in subdivision (b) [governing 'an order modifying or terminating a support order . . . entered due to the unemployment of either the support obligor or the support obligee'], or by federal law (42 U.S.C. Sec. 666(a)(9))." (§ 3653, subd. (a).)

[13] Undesignated references to rules of court are to the California Rules of Court.

rule 8.204(a) and (b).  We find the trial court properly applied section 3950 and properly denied Look's request for additional discovery.  We address Look's contentions in turn.

### A.  *The Procedural Defects Do Not Require Us to Disregard Responsive Brief*

Rule 8.204(a)(1)(C) requires that, in their briefs on appeal, parties, "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  "We have the *discretion* to disregard contentions unsupported by proper page cites to the record.  [Citations.]"  (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970, italics added.)  While this rule supports judicial economy (see *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745 [" 'We are a busy court which "cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when his brief makes no reference to the pages where the evidence on the point can be found in the record." ' [Citation.]"]), in the instant matter, Penovatz did provide a detailed statement of facts, supported by citations to the record.  Although he did not cite to the record in the legal argument section of his responsive brief, and should have done so, the record is not so voluminous that we feel compelled to exercise our discretion and disregard his brief.

Similarly, we have discretion to disregard arguments not properly segregated under discrete headings, as required by rule 8.204(a)(1)(B) ["Each brief must:  [¶] . . . [¶] (B) State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority . . . ."].  (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3.)  While Penovatz's headings may be imperfect, we find he substantially complied with the relevant rule, and thus need not exercise our discretion to disregard his arguments.

### B.  *The Trial Court Did Not Err in Applying Section 3950*

Look argues the trial court erred in applying section 3950 to find that Penovatz did not have to reimburse Look for amounts he spent on Christopher's "necessaries" during the relevant period, primarily based on the court's failure to consider the calculation of

child support under the guideline formula set forth in section 4055. He contends that doing so injected a finding of fault into the case, rather than focusing on the best interests of the child, as required by the Family Code. He believes he has a right to reimbursement despite Rothert's failure to seek modification of the child support order in the dissolution action, as Penovatz had a duty to support Christopher according to his means.

"Appellate courts will disturb discretionary trial court rulings only upon a showing of a clear case of abuse and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331, 216 Cal.Rptr. 718, 703 P.2d 58.)" (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986.) " ' "The abuse of discretion standard … measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria." ' [Citation.] As long as there is a reasonable or even fairly debatable justification for the ruling, we will not set it aside. [Citation.]" (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1195; accord *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1474.) We presume the judgment is correct and will affirm it on any ground supported by the evidence, whether articulated by the trial court or not. (See *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

Look does not dispute that Penovatz was paying to Rothert what was, under the operative court order, guideline child support; the dispute is whether the amount Penovatz was paying represented what would have been guideline if calculated during the period Christopher lived with Rothert and Look. Although factually distinct from the instant matter, caselaw discussing the predecessor to section 3950[14] indicates a third party does not have a right to reimbursement where the parent from whom he or she is seeking

---

[14] "Section 3950 continues former Civil Code Section 207 without substantive change." (Cal. Law Revision Com. com., 29F West's Ann. Fam. Code (2013 ed.) foll. § 3950, p. 37.)

reimbursement is paying child support pursuant to a court order. (*Blair v. Williams* (1927) 86 Cal.App. 676, 682-688 (*Blair*) [see discussion, *post*]; see *Lewis v. Lewis* (1917) 174 Cal. 336, 339-341 [separate action by minor child against parent does not lie where divorce decree included custody order but did not address support; the proper remedy is found in the divorce action]; *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 855-856 [under then-existing law, separate action terminating parental rights does not require court in dissolution action to terminate child support].) The proper remedy if the payor parent is not paying an appropriate amount of support pursuant to a court order is to seek modification of the child support order. "[W]hen there has been a decree of divorce, and such decree vests the custody of the minor children in the mother, the father is under no obligation to provide for such children any support or education beyond that which may be directed by the court which has granted the divorce, either in its decree or by subsequent modification. [¶] . . . [¶] This does not mean that the natural duty of a father to provide for his minor child is, under our law, finally and absolutely terminated by an award of the custody of the child to the mother. Where such an award is made by a decree of divorce, or in an action for custody of children without divorce [citation], the court may, as we have already pointed out, provide at any time during the minority of the children for their support and education by the father, who is deprived of their custody. . . . The obligation referred to is one to be enforced by the court which granted the divorce, and in the divorce action itself." (*Lewis*, at pp. 399-340.)

In *Blair*, the plaintiff was a nurse hired by a father to care for his and his wife's disabled infant. (*Blair*, *supra*, 86 Cal.App. at p. 678.) After separation, the father moved to California; he thereafter helped the mother, child, and nurse move to California. (*Ibid*.) Prior to dissolution, the father was paying the nurse's salary. (*Ibid*.) In the divorce proceeding, the court ordered the father to pay child and spousal support to the mother, with the understanding the mother would pay the nurse, who knew the contents

of the court order.[15] (*Ibid.*)  The Court of Appeal, upon reviewing the relevant statutory provisions concerning child support, including the predecessor to section 3950, determined that the father was not obligated to pay any more than what was ordered for support in the divorce decree.  (*Id.* at pp. 687-688.)  In doing so, the court adopted a holding from the supreme court of Nebraska:  " 'When in a divorce action there has been such a judicial ascertainment of the amount the father should pay for the support of his minor children, that amount is presumed to be just and reasonable until it is reversed or modified by a subsequent order of the court.  *The amount thus ascertained*, so long as the decree remains in full force, *is* in this state *the legal measure of the father's liability for the support of his child.* . . .  While the decree in the divorce action awarding the custody of the minor children to the mother and providing for an allowance for their support and maintenance remains in force, the father is not required to provide further clothing or shelter for his minor children, *the measure* in that respect *being the amount provided in the decree.*'  [Citation.]"  (*Ibid.*, italics in original.)  The appellate court gave great credence to the fact the nurse was fully aware of the trial court's order.  (*Id.* at pp. 684-685.)  The Court of Appeal reversed the trial court to the extent it required the father to pay the nurse any money after entry of the support order.  (*Id.* at p. 688.)

In the instant matter, Look knew Penovatz was paying Rothert $400 per month pursuant to a court order.  He also knew Penovatz and Rothert attempted to negotiate modification of child support when Christopher moved in with him, but failed to reach a resolution of their dispute.  In fact, Look testified at trial that it was "[his] decision not to

---

[15] The Court of Appeal assumed the trial court awarded the mother custody of the child, although such an award did not appear in the transcript.  (*Blair*, *supra*, 86 Cal.App. at p. 680.)  The appellate court noted, "it appears from the evidence without conflict that the child was actually in the mother's custody," suggesting the court did not rest its ruling on there being a formal custody order.  (*Ibid.*)  Thus, the fact that Penovatz and Rothert did not memorialize their custody arrangement in a court order does not affect our interpretation of the appellate court's ruling in *Blair*.

force the decision on the support and just continue[] supporting [Christopher]."  This case falls squarely within the rule set by *Blair*; the amount of support Penovatz owed under the support order is presumed to be " 'just and reasonable until it is reversed or modified by a subsequent order of the court.' "  (*Blair*, *supra*, 86 Cal.App. at p. 687.)  Despite knowing Rothert could seek modification in the dissolution action, she elected not to do so.  Look not only knew Rothert could modify the child support order, he decided not to force the issue "and just continue supporting [Christopher]."

Look generally argues the trial court relied on "obsolete" authorities "completely out of phase with the modern law of child support," although he did not specifically reference *Blair* or the other cases we cite in this opinion.  While *Blair,* a case out of the Second District Court of Appeal, is an older case, it has never been overruled.  "We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be.  [Citation.]  We respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision.  Thus, we ordinarily follow the decisions of other districts without good reason to disagree.  [Citation.]"  (*Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485.)  We see no reason to disagree with *Blair* in the instant matter.

Our reading of *Blair* and the other cases does not undermine the modern policies of the statutory child support scheme in California, under which "the father and mother of a minor child have an equal responsibility to support their child in the manner suitable to the child's circumstances."  (§ 3900.)  Penovatz was performing his duty under the law, paying his obligation pursuant to the operative child support order.  Rothert could have, and should have, sought modification of the child support order in the dissolution action, upon a showing of a material change of circumstances.  (§ 3651, subd. (a); *In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357.)  To the extent Rothert had concerns about potential retribution by Penovatz if she sought increased child support in the dissolution action, she could have raised those issues in the dissolution action as well; the

Family Code and California Rules of Court provide protection for litigants in family proceedings when they have concerns about a child being withheld or abducted. (§§ 3048, subd. (b) [governing situations where facts indicate there is a risk of abduction of the child], 3062 et seq. [authorizing ex parte temporary custody orders, including orders restraining removal of the child from the state, upon a showing of immediate harm to the child or risk the child will be removed from the state]; rule 5.121 [governing procedure for seeking ex parte orders].)

The fact that Rothert allegedly could not afford an attorney to represent her to seek modification does not change the analysis. As the trial court pointed out, the Family Code includes provisions designed to equalize any disparity in the parties' ability to obtain legal representation. (§§ 2030, 3652 [prevailing party award in support modification proceeding].) Moreover, the trial court maintains a family law facilitator's office to provide services to unrepresented parties unable to afford legal representation in child support and custody proceedings. (See §§ 10001, subds. (a)(4), (b), 10003, 10004.) Rothert's failure to seek relief in the dissolution action does not give Look the right to now seek reimbursement from Penovatz. We conclude the trial court did not abuse its discretion and we affirm the trial court's judgment in favor of Penovatz.[16]

In sum, the record reflects that Look was cohabitating with Christopher's mother while Penovatz was paying child support to Christopher's mother pursuant to a court order. Under these circumstances, the trial court properly found that Penovatz did not neglect to provide for Christopher and we conclude that the trial court did not abuse its discretion in determining that Look was not entitled to reimbursement under section 3950.

---

[16] Given this ruling, we will not address Look's other contentions regarding the trial court's application of section 3950.

### C. The Trial Court Did Not Err in Denying Additional Discovery

We review the court's order denying Look's motion to compel further interrogatory responses for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) The trial court denied the motion on the grounds that Penovatz had a right of privacy in the requested financial information, and Look failed to "demonstrate that the information sought [was] 'directly relevant' to a claim or defense, 'essential to the fair resolution of the lawsuit,' and not available through less intrusive means."

The trial court correctly stated the law regarding discovery of financial information. "[I]ndividuals have a legally recognized privacy interest in their personal financial information." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 330.) In the face of an objection based on privacy, the party seeking discovery of the information must show that the information is "*directly relevant*" to a cause of action or defense, such that disclosure is "essential to the fair resolution of the lawsuit." (*Britt v. Superior Court* (1978) 20 Cal.3d 844, 859, italics in original; *Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 665, disapproved on other grounds by *Williams v. Superior Court* (2017) 3 Cal.5th 531.) Given our conclusion that Look was not entitled to seek reimbursement based on Penovatz's payment of child support pursuant to the order in the dissolution action, we agree the request for financial information from Look was not relevant to the claim or essential to the fair resolution of the lawsuit. The trial court did not abuse its discretion in this regard.

## III.    DISPOSITION

We affirm the judgment.

_____

Greenwood, P.J.

WE CONCUR:

_____

  Bamattre-Manoukian, J.

_____

  Danner, J.

Look v. Penovatz
No. H044754

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 2015-1-CV-277345 |

Trial Judge:                                     The Honorable Carrie A. Zepeda

Attorney for Appellant,              William B. Look Jr., pro. per., for
WILLIAM B. LOOK, JR.:             Appellant.

Attorneys for Respondent,            Law Office of Peter A. Lindstrom
BELA PENOVATZ:

Peter Alan Lindstrom for
Respondent.

Look v. Penovatz
H044754