Filed 6/5/26  Phan v. Knight Sacramento SU CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| MICHELLE PHAN,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>KNIGHT SACRAMENTO SU INC., et al.,<br>    Defendants and Appellants. | C103401<br><br>(Super. Ct. No. 24CV016958) |

Defendants and appellants, Knight Sacramento SU Inc., et al. (Knight), are California corporations operating car dealerships throughout the state.  Plaintiff and respondent, Michelle Phan (Phan), was intermittently employed by Elk Grove Subaru (Subaru) and Elk Grove Volkswagen (Volkswagen) between 2022 and 2024.  In 2024, Phan filed wage and hour claims against Knight in both her individual capacity and on behalf of a class of current and former employees of Knight.  Phan demanded a jury trial.

Relying on the arbitration agreements signed by Phan during her employment, Knight moved to compel arbitration of Phan's claims, or alternatively, to sever any invalid terms and enforce the remainder of the agreements.  Relying on *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312 (*Cook*), the trial court denied the motion, finding that the arbitration agreements were both procedurally and

1

substantively unconscionable and therefore unenforceable.  The court also declined to sever the unconscionable terms.

Knight appeals and argues that the trial court incorrectly applied *Cook*, and in any event, *Cook* is distinguishable.  Knight also asks this Court to decline to follow the *Cook* decision.

We affirm the trial court's order.

FACTS AND HISTORY OF THE PROCEEDINGS

Arbitration Agreements

Phan was hired by Elk Grove Volkswagen around November 16, 2022.  While employed there, Phan signed three arbitration agreements, including a standalone arbitration agreement that supersedes all the others.  Phan signed the standalone arbitration agreement on December 6, 2022.

Phan also worked at Elk Grove Subaru between April and October 2023, and again between May and July 2024.  While employed there, Phan signed four arbitration agreements, including a standalone arbitration agreement that supersedes all the others. Phan signed this standalone agreement on May 23, 2024.

The standalone arbitration agreements from Volkswagen and Subaru (Agreements) are identical.  The Agreements require Phan to pursue "any claims," including "any and all claims which arise out of the employment context or any other interaction/relationship we had, have or may have in the future" against Knight, and third-party beneficiaries, through binding arbitration.  The Agreements further define the scope of arbitrable claims as "any claim, dispute, and/or controversy that either party brings against the other []including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, the Americans With Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, claims pursuant to the California Private Attorneys General Act ('PAGA')

2

unless prohibited by controlling law, as well as all other applicable state or federal laws or regulations which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company, as well as any third-party beneficiaries of the Company."

The scope of arbitrable claims also includes "any claims arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company or third-party beneficiaries, whether based on tort, contract, statute, equity or otherwise." Third party beneficiaries are defined in the Agreements as "the Company's owners, directors, officers, managers, employees, agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans."

There are several exceptions to the scope of arbitrable claims including claims arising under the National Labor Relations Act, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, and at Phan's option, any claims involving sexual harassment or sexual assault.

The terms of the Agreements do not allow Phan to bring a class claim or allow any arbitrator to consider a class claim.

The Agreements also include a severance clause which mandates that if any "term or provision, or portion" of the agreement is void or unenforceable, it "shall be severed and the remainder of this agreement shall be enforceable."

Phan's Claims and Knight's Request for Arbitration

On August 27, 2024, Phan, on her own behalf and on behalf of a class of current and former employees, filed a lawsuit against Knight alleging the following: (1) unfair competition (Bus. & Prof. Code, § 17200, et seq.); (2) failure to pay minimum wages

3

(Lab. Code, §§ 1194, 1197, 1197.1); (3) failure to pay overtime wages (Lab. Code, § 510, et seq.); (4) failure to provide required meal periods (Lab. Code, §§ 226.7, 512); (5) failure to provide required rest periods (Lab. Code, §§ 226.7, 512); (6) failure to provide accurate itemized statements (Lab. Code, § 226); (7) failure to provide wages when due (Lab. Code, §§ 201, 202, 203); and (8) failure to reimburse employees for required expenses (Lab. Code, § 2802).

Phan demanded a jury trial.

On the same day, Phan filed a notice with the Labor and Workforce Development Agency asserting a PAGA claim for various alleged violations of the Labor Code and the Industrial Welfare Commission Wage Order(s) on an individual and class representative basis. Phan did not include the PAGA claim in her wage and hour lawsuit.

Citing to the Agreements, Knight requested that Phan submit her claims for arbitration, but she declined, stating, "It is our position that the arbitration agreement is unenforceable because it is unconscionable and cannot be saved by the severability clause."

Motion to Compel

Knight filed a motion to compel arbitration on October 16, 2024, arguing that the Agreements are valid and enforceable, and—based on the terms of those Agreements—asking the trial court to compel arbitration of Phan's individual claims and to strike Phan's class actions claims.

Phan opposed the motion, arguing that the Agreements are both procedurally and substantively unconscionable. Specifically, Phan claimed the Agreements are procedurally unconscionable because they are contracts of adhesion that were pre-printed by Knight and presented to her on a take-it-or-leave-it basis as a condition of her employment. Phan further argued that the procedural unconscionability is high because she was required to sign the Agreements after "over 1.5 years" of employment and

4

therefore faced a "significant amount of economic pressure" by Knight to sign the Agreements if she wanted to continue her employment.

Phan also made a variety of arguments to support her claim that the Agreements are substantively unconscionable. As relevant here, Phan relied upon *Cook* to argue that the scope of the claims to be arbitrated is too broad and that the Agreements confer a nonmutual benefit to Knight by forcing Phan to arbitrate all her claims against third parties but not requiring the third parties to arbitrate their claims against Phan.

In addition to her unconscionability arguments, Phan also asked the court not to sever her claims because the unconscionable terms permeated the Agreements and severing them would not remove the taint they created.

In reply, Knight acknowledged that the Agreements were adhesive but argued that their adhesive nature resulted in only a "limited" or "low" procedural unconscionability because the arbitration provisions were provided in standalone documents and were not buried in lengthy employment contracts.

To support their position against substantive unconscionability regarding the scope of the Agreements, Knight argued that this case is distinguishable from *Cook*. According to Knight, *Cook* "repeatedly indicated that the employer could have prevailed had it only provided a justification for the broad scope of claims covered by its agreement."

Based on this interpretation of *Cook,* Knight presented a declaration from its Human Resources Manager, Stephanie Harrison, to explain and justify the breadth of the Agreements. According to Harrison, Knight purposefully drafted the Agreements broadly because current and former employees raise "many different types of claims" and Knight strives to "capture" all potential claims against them in the Agreements. Despite this explanation for the breadth of the Agreements, Harrison clarified that the Agreements "are only meant to be used with employees and to cover the employment-related claims they may bring." By providing these business justifications for the breadth

5

of the Agreements, Knight argued that this case is different from *Cook*, where the employer failed to provide any justification for the scope of the agreement.

On mutuality, Knight argued that because the third parties included in Phan's lawsuit sought to compel arbitration of Phan's claims, this made "the agreements mutual between them and [Phan]."

Trial Court's Ruling and Knight's Challenge of *Cook*

The trial court issued a tentative ruling denying the motion. Finding the Agreements adhesive because they are standardized contracts drafted by Knight and offered on a take-it-or-leave-it basis with no opportunity for Phan to negotiate, the court held that the Agreements were procedurally unconscionable. However, because the Agreements were provided as standalone documents with "clear and concise" language, the court agreed with Knight that the procedural unconscionability level was low.

On substantive unconscionability, the trial court found that the plain language of the Agreements covered a broad category of claims beyond those related to Phan's employment. In considering Knight's justification argument, the trial court disagreed with Knight's interpretation of the holding in *Cook* insofar as Knight claimed that it held an employer could prevail in compelling arbitration if there was justification for the overbreadth of the Agreements. To the contrary, the trial court noted that *Cook* allows employers to include a "margin of safety" in their contracts if there is a commercial need for doing so but that the "business realities" giving rise to such needs must either be explained in the contract or factually established. Finding that the Agreements did not explain "business realities" to justify the wide scope of claims covered, and that Knight failed to factually establish any, the trial court held that Knight did not justify the broad scope of the arbitrable claims in the Agreements.

6

The court also found that the Agreements lacked mutuality because their terms required Phan to arbitrate all her claims against third-party beneficiaries but did not require those third-party beneficiaries to arbitrate their claims against her.

Based on the overbroad scope of arbitrable claims and lack of mutuality, the court held that the Agreements contained a high degree of substantive unconscionability. The court declined to sever the unconscionable terms because they "permeated" the Agreements.

The trial court heard motion to compel on January 31, 2025, where Knight argued, for the first time, that the *Cook* decision was wrong and should not be followed. The trial court was not persuaded and adopted the tentative ruling.

Knight appeals.

DISCUSSION

*I*

*The Parties' Arguments on Appeal*

Knight challenges the trial court's findings on substantive unconscionability in two ways. First, Knight claims that the court misapplied *Cook* because the scope of the claims in the Agreements here are not analogous to the scope of claims at issue in *Cook*, where the court found them to be overbroad without justification. Instead, Knight asks this court to find that the scope of arbitrable claims in the Agreements is akin to the agreement in *Little v. Auto Stigler, Inc.* (2003) 29 Cal.4th 1064 (*Little*). In the event this court determines that the Agreements are substantively unconscionable for being overbroad, Knight contends that it provided sufficient justification for the overbreadth.

Phan disagrees, arguing that Knight forfeited their ability to raise their *Little* analogy on appeal, and in any event, *Little* is not applicable here because it did not reach the issue of whether the scope of the arbitrable claims was overly broad. According to Phan, the Agreements here are analogous to *Cook* because they also require arbitration

7

for all claims, whether related to employment or not.  As such, Phan argues that, like *Cook*, we too should find that the scope of arbitrable claims in the Agreements here is overly broad and therefore substantively unconscionable.

Second, Knight argues that the trial court erred by finding that the Agreements lack mutuality.  According to Knight, by filing the motion to compel, the third-party beneficiaries have "actually accepted" a benefit from the Agreements, and in so doing, have made the Agreements mutual between them and Phan.

In response, Phan contends that unconscionability is evaluated when the agreement is made, so any subsequent acceptance of a benefit from the Agreements by the third parties is not relevant.  Phan also claims that there is a myriad of other third-party beneficiaries included in the Agreements who did not move to compel arbitration and therefore remain able to litigate their claims against Phan even though she cannot do the same against them.

Knight also challenges the trial court's decision not to sever the unconscionable terms in the Agreements, arguing that severance here would not require substantive rewriting to eliminate any unconscionability.  Phan contends that severance is not appropriate here because the unconscionable terms are central to the purpose of the Agreements and the interests of justice would not be furthered by severing the terms.

Although presented as an alternative position, Knight lastly raises a threshold issue: whether this court should follow the *Cook* decision which, according to Knight, is not legally sound.  Phan disagrees.

We agree with Phan regarding each of the arguments Knight raises on appeal.

## II

### *Cook v. University of Southern California*

We begin with the threshold issue of whether to follow the decision from Division Four of the Second District Court of Appeal in *Cook*.  Although decisions of our sister

8

courts are not binding on us (*Winns v. Postmates, Inc*. (2021) 66 Cal.App.5th 803), " 'we ordinarily follow the decisions of other districts without good reason to disagree.' " (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 137; see *Look v. Penovatz* (2019) 34 Cal.App.5th 61, 72 [" 'We respect stare decisis, ... which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree' "]; *People v. The North River Ins. Co*. (2019) 41 Cal.App.5th 443, 454-455 [same].)

In *Cook*, the plaintiff (Cook) filed discrimination and harassment claims against her former employer, University of Southern California (USC), and two coworkers. (*Cook, supra,* 102 Cal.App.5th at pp. 316-317.) Cook had signed an arbitration agreement with USC wherein the parties agreed to arbitrate " 'all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee.' " (*Id.* at p. 317.) The arbitration agreement expressly survived termination of Cook's employment and could not be revoked or modified without a written document signed by the President of USC. (*Ibid.*) The trial court found the arbitration agreement to be unconscionably infinite in scope and duration because it applied to all of Cook's claims, in perpetuity, regardless of whether they arose from her employment. (*Id.* at p. 318.)

The Court of Appeal agreed, finding the arbitration agreement unconscionable for three reasons (1) the scope of arbitrable claims included in the agreement was overbroad without justification; (2) the duration of the agreement was limitless without express consent from USC; and (3) the agreement lacked mutuality because it required Cook to arbitrate all of her claims against USC and its related entities, but the related entities were

9

not likewise required to arbitrate their claims against Cook. (*Cook, supra,* 102 Cal.App.5th at pp. 324-327.)

Knight provides two reasons why this court should depart from the *Cook* decision. First, Knight contends that the *Cook* court cited no authority—and ignored others—in making its "implied conclusion" that "an arbitration agreement creates 'one-sided results' where broadly-worded scope provisions apply *equally* to both parties." Second, Knight argues that *Cook* wrongly requires mutuality between third party beneficiaries and a contracting party.

Knight's initial argument is premised on several misunderstandings of the *Cook* decision. According to Knight, the problem with *Cook* is that the court implicitly concluded that broad arbitration agreements are per se unconscionable even when they apply "equally" to both parties. *Cook* did not reach such a sweeping conclusion. For one thing, the *Cook* court determined that the agreement did not apply equally to both parties; rather, it found that the agreement provided a one-sided benefit to "broad swaths of third party beneficiaries only in favor of USC…." (*Cook, supra,* 102 Cal.App.5th at pp. 326-327.)

Additionally, the court neither expressly nor impliedly suggested that all broadly worded arbitration agreements are per se unconscionable. (*Ayala-Ventura v. The Superior Court of Fresno County* (2026) 119 Cal.App.5th 241, 257 [finding that *Cook* did not conclude an arbitration agreement covering all claims including those unrelated to employment is per se unconscionable].) Instead, *Cook* found that the agreement between Cook and USC that expressly included claims outside of the employment context—without justification—was overly broad. (*Cook, supra,* 102 Cal.App.5th at pp. 324-325.)

Knight's position on *Cook*'s mutuality decision fares no better. According to Knight, mutuality is not required between third parties and a contracting party. In support of this position, Knight cites to Civil Code section 1559, which states that a "contract, made expressly for the benefit of a third person, may be enforced by him at any

10

time before the parties thereto rescind it." Knight also relies on a variety of cases that stand for the general proposition that third parties can enforce arbitration even if they are not signatories to the agreement and have not supplied consideration.

It is true that third parties can enforce arbitration without being signatories to a contract or supplying consideration, but this misses the point. Indeed, the concern for the *Cook* court was the fact that USC's related entities were not required to enter into arbitration for any claims they had against Cook, but Cook was required to arbitrate all her claims against them, unless she could carry the difficult burden of showing that the third parties actually accepted a benefit under the agreement. (*Cook, supra,* 102 Cal.App.5th at p. 328.) This one-sidedness—without justification and benefitting only USC—was deemed unconscionable by the *Cook* court. (*Ibid*.)

*Cook*'s mutuality analysis faithfully follows the "the doctrine of unconscionability [which] limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 118-119 (*Armendariz*) [finding that an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party is unconscionable].)

Knight fails to provide us with a "good reason" to disagree with *Cook*.

*III*

*General Principles of Unconscionability*

Both California law and federal law favor enforcement of valid arbitration agreements. (*Armendariz, supra*, 24 Cal.4th at p. 97.) But generally applicable contract defenses such as unconscionability may be applied to invalidate an arbitration agreement without contravening the Federal Arbitration Act or California law. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "A contract is unconscionable if one of the parties lacked a

11

meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Ibid*.) "[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133.) Both procedural and substantive unconscionability must be present to establish unconscionability. (*Armendariz*, at p. 114.) "But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " (*Ibid.*)

Because the parties do not challenge the trial court's procedural unconscionability finding, we focus on substantive unconscionability. The substantive element of the unconscionability analysis "looks to the actual terms of the parties' agreement to 'ensure[ ] that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided." ' [Citation.] These formulations 'all mean the same thing.' [Citation.] Substantive unconscionability ' "is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.' " ' [Citation.] 'The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner.' [Citation.] While private arbitration may resolve disputes faster and cheaper than judicial proceedings, it ' "may also become an instrument of injustice imposed on a 'take it or leave it' basis." ' [Citation.] ' "The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness." ' " (*Magno v. The College Network, Inc*. (2016) 1 Cal.App.5th 277, 287-288.)

"The determination of arbitrability is a legal question subject to de novo review. [Citation.] We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.)

*IV*

*The Scope of the Arbitrable Claims is Overly Broad Without Justification*

Overbreadth

The Agreements require Phan to arbitrate "any claims" she may have against Knight "that currently exist or that may arise in the future" including "any and all claims which arise out of the employment context *or any other interaction/relationship we had, have or may have in the future*" and "any claims arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, *or other association* with the Company or third-party beneficiaries, whether based on tort, contract, statute, equity or otherwise." (Italics added.)

We see no material difference between the agreement in *Cook* and the Agreements here. The agreement in *Cook* required the plaintiff to arbitrate "all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities .…" (*Cook, supra,* 102 Cal.App.5th at p. 317.) While the Agreements here do not include this express language, the plain language is so broad that they, like the *Cook* agreement, also encompasses all of Phan's claims against Knight and its related third parties, whether related to her employment or not. And, like the agreement in *Cook*, Phan is bound by these terms indefinitely as the Agreements require her to arbitrate all future claims as well. As did the *Cook* court, we too find such an expansive scope of arbitrable claims to be substantively unconscionable.

13

We are not persuaded by Knight's argument that the Agreements here are analogous to the agreement in *Little*. In *Little*, the arbitration agreement stated, in pertinent part, that the parties agreed that "any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act...." (*Little, supra,* 29 Cal.4th at pp. 1069-1070.) Although the *Little* court did not consider whether the scope of arbitrable claims in the agreement was overly broad, the *Cook* court characterized this language as expressly limiting the arbitrable claims to those "arising from or related to employment." (*Cook, supra,* 102 Cal.App.5th at p. 324.)

Regardless of whether *Cook*'s characterization of the *Little* agreement was correct, the Agreements here are not analogous to the one in *Little*. Although the Agreements share similar language to the one in *Little*, the Agreements here go further. Indeed, unlike *Little*, Phan agreed to arbitrate any claim that arises out of the employment context "or any other interaction/relationship we had, have or may have in the future." This language distinguishes the Agreements from the one in *Little* and instead, demonstrates their overbreadth of arbitrable claims beyond the employment context like the agreement in *Cook*.

The trial court therefore did not err when it found that the Agreements were substantively unconscionable for being overly broad.

14

<u>Justification</u>

"When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." (Civ Code, § 1670.5, subd. (b).) As the *Cook* court recognized, "employment contracts can provide a 'margin of safety' that grants extra protection to the party with superior bargaining power if there is a legitimate commercial need for doing so." (*Cook, supra,* 102 Cal.App.5th at p. 324.) However, the " 'business realities' " giving rise to the commercial need must either be explained in the contract itself or must be factually established. (*Ibid.*)

Knight contends that it presented two business justifications for the overbreadth of the arbitrable claims included in the Agreements. First, Knight explains that the Agreements are drafted broadly to include claims beyond the employment context to ensure they cover all claims "potentially" related to the employment relationship including those that do not seem related like unfair business practices or conversion claims. Second, Knight chose to draft the Agreements broadly to avoid the potential of failing to be able to arbitrate claims that are excluded from an agreement that is too narrow in its scope.

While we recognize that Knight has a commercial need to cover any claims by an employee that could relate to an employment relationship, it does not justify the breadth of claims included in the Agreements here. The way the Agreements are worded require Phan to arbitrate any past, present, or future claim she has against Knight and its third-party beneficiaries including "any and all claims which arise out of the employment context *or any other interaction/relationship we had, have or may have in the future*." The plain language of the Agreements covers much more than claims that are "potentially" related to employment; indeed, the Agreements cover any type of claims

15

related to any interaction or relationship between Phan and Knight and its third parties. To the extent Knight wanted to include any type of claim that relates, or potentially relates, to employment relationships, it could have said so in a manner that was broad enough to capture those claims but not so broad as to go beyond them.

The trial court was therefore also correct to conclude that Knight failed to provide a justification for the overbreadth of included arbitrable claims.

*V*

*The Agreements Lack Mutuality*

The Agreements require Phan to arbitrate all her claims, whether related to her employment or not, against not only Knight, but also against any third-party beneficiaries defined in the Agreements as "the Company's owners, directors, officers, managers, employees, agents, partners, attorneys, sister-companies, subsidiaries, parent companies, joint-venturers, affiliated persons/entities, independent contractors, and parties affiliated with its employee benefit and health plans." According to *Cook*, an agreement that requires a contracting party to arbitrate all claims against third parties but does not provide this reciprocal benefit to the contracting party, is one-sided and—without justification—substantively unconscionable. (*Cook, supra,* 102 Cal.App.5th at pp. 326-328.) We agree.

Knight contends this case is distinguishable from *Cook* because the Agreements have become mutual since the third parties requested arbitration of Phan's claims. But unconscionability is evaluated at the time a contract is made. (Civ. Code, § 1670.5, subd. (a); *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 505 (*Ramirez*).) Thus, the post-contractual requests by third parties here to arbitrate Phan's claims are not relevant to the consideration of whether the arbitration agreement was substantively unconscionable at the time it was signed. In any event, Phan did not include all the listed third parties in the Agreement in her lawsuit, so there are still third parties who have not

16

sought to arbitrate any claims against Phan. Thus, even assuming mutuality could be created after the agreement is made, it would only impact the third parties who requested to arbitrate Phan's claims. The Agreements are still therefore unjustifiably one-sided as to the other nonparticipating third parties for any other claims that they may litigate but Phan must arbitrate.

In the context of mutuality, the Agreements in this case are analogous to the one in *Cook*. In both cases, the employer received the significant benefit of requiring the employee to arbitrate all their claims against the listed third parties without any reciprocal benefit to the employee. Like *Cook*, we find this one-sidedness substantively unconscionable without justification.

The trial court therefore did not err in finding that the Agreements lacked mutuality and were therefore also substantively unconscionable for this reason.

*VI*

*The Trial Court Did Not Abuse its Discretion in Declining to Sever Provisions*

Civil Code section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds [a] contract or any clause of the contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." " ' "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever unless the agreement is 'permeated' by unconscionability." ' " (*De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 492, disapproved on other grounds in *Ramirez, supra,* 16 Cal.5th 478 at pp. 505-506.)

17

In *Armendariz*, our Supreme Court stated that Civil Code section 1670.5, subdivision (a) "appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Armendariz, supra*, 24 Cal.4th at p. 122.) The court proceeded to analyze "the question of when a trial court abuses its discretion by refusing to enforce an entire agreement." (*Ibid*.) And it concluded that severance was inappropriate in that case in part because there were "multiple unlawful provisions," meaning "the trial court did not abuse its discretion in concluding that the arbitration agreement [wa]s permeated by an unlawful purpose." (*Id*. at p. 124.)

However, there is "no bright-line rule [that] *requires* a court to refuse enforcement if a contract has more than one unconscionable term. Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified. At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it." (*Ramirez, supra,* 16 Cal.5th at p. 516.)

The trial court here found that the central purpose of the Agreement was to require Phan to arbitrate all claims against Knight and its third parties, whether related to employment or not. We agree. And as we have explained, these two terms are substantively unconscionable due to their overbreadth and lack of mutuality without justification. Because the central purpose of the Agreements is tainted with illegality, the trial court did not abuse its discretion by refusing to enforce it in its entirety.

*VII*

*Remaining Claims*

Knight also addresses additional issues relating to substantive unconscionability including whether the Agreements waive unwaivable claims under PAGA; whether the Agreements satisfy the requirements set forth in *Armendarez*; and whether the Agreements contain a blanket jury waiver. Having decided the arbitration agreements here at issue are unconscionable and therefore unenforceable, we need not consider these issues. Moreover, the trial court expressly declined to rule on these issues. We therefore have nothing to review on appeal.

DISPOSITION

The judgment is affirmed.


/s/
HULL, Acting P. J.

We concur:



/s/
BOULWARE EURIE, J.



/s/
FEINBERG, J.

19